# SUPREME JUDICIAL COURT

#### FOR THE

## COUNTIES OF SUFFOLK AND NANTUCKET, MARCH TERM 1853, AT BOSTON.

PRESENT:

Hon. LEMUEL SHAW, CHIEF JUSTICE.
Hon. CHARLES A. DEWEY,
Hon. THERON METCALF,
Hon. GEORGE T. BIGELOW, } JUSTICES.
Hon. BENJAMIN F. THOMAS,

---

FRANCIS B. FAY & another *vs.* JOSEPH NOBLE & another.

Persons dealing with a manufacturing and trading corporation, organized under the laws of Massachusetts, are not bound by the specifically enumerated powers of the officers of such corporation, as expressed in its by-laws; but as against third persons, such officers shall be taken to have the authority which their designations ordinarily imply; the treasurer to do acts relating to the finances, the secretary to keep records, the general agent to superintend and manage the business, for which the corporation is chartered; and such acts

are binding upon the corporation without express authority, and are not invalid merely because certain special and enumerated powers, not excluding others, are conferred upon such officers by the by-laws.

Such a corporation has power to borrow money as incident to its power to purchase stock and materials, and to give security by pledging the property so purchased; and as corporations can act only by their officers, the treasurer and general agent unitedly have power to borrow money for the use of such corporation, to give its negotiable note, and to pledge its personal property for the same, and execute the necessary documents therefor; notwithstanding the by-laws give such officers certain specific powers which do not include the foregoing acts.

The by-laws of a manufacturing and trading corporation provided that the treasurer should preside at meetings, keep suitable books to record shares, and also keep records of meetings; and that the general agent should have power to purchase stock, contract for work and materials for the use and benefit of the corporation, and generally to superintend the business thereof. Another by-law declared that " all notes for the purchase of stock, or contracts for labor, shall be signed by the treasurer, and approved by at least one director." The by-laws did not provide for such officers as directors, although four were chosen; neither did they confer power upon any officer, in express terms, to make sales, borrow money, or to pay and receive money. The general agent, being also a director, borrowed $2,000, for the use of the corporation, for which the treasurer gave the corporate note, which was approved by said director. To secure said note the treasurer also delivered and assigned to the holder thereof a bill of lading of one hundred tons of iron belonging to the corporation, and indorsed a policy of insurance thereon to such holder. *Held,* that the corporation was bound by these acts of its officers, and that the pledgee had good title to the iron against subsequent mortgagees from the same corporation.

THIS action was tried before the chief justice of this court, November term, 1851, who signed the following report:

" Replevin for about seventy-two tons of American pig iron, parcel of the one hundred tons hereinafter mentioned. Plea, the general issue, and also a claim of title in the defendants, under a mortgage from the West Boston Iron Company, dated November 14, 1848. There was evidence tending to show, that on the 25th of September, 1848, upon application made by one Leonard Fuller, purporting to act in behalf of the West Boston Iron Company, the plaintiffs, through a broker employed by said Fuller, loaned a sum of $2,000, and took from him therefor a note, of which a copy follows: $2,000. Boston, 25th September, 1848. Value received, the West Boston Iron Company, by their treasurer, promise to pay to the order of Mr. Leonard Fuller, two thousand dol-

lars, in twenty days, without grace. J. M. Dodd, Treasurer West Boston Iron Company. Approved. Leonard Fuller, Director; Indorsed, 'Leonard Fuller;' as security for said one hundred tons of iron, which iron had been recently purchased by said Fuller, as agent of the West Boston Iron Company, of Messrs. Holdeme & Feddeman, and was then on ship board, on its way from Newark to Boston.

" The plaintiffs took a bill of sale of said iron, in the form following, to wit: Boston, 25th September, 1848. Messrs. Fay & Farwell, bought of West Boston Iron Company, one hundred tons pig iron, *a* $28—$2,800, on board schooner Rio Grande, from Newark, N. J., for Boston. Received payment, Leonard Fuller, Agent.

" The plaintiffs also took an assignment of the bill of lading, as follows: Boston, 25th September, 1848. Please to deliver the within to Messrs. Fay & Farwell. J. M. Dodd, Treasurer. Also, an assignment of a policy of insurance, of the following tenor: In case of loss on the insurance of twenty-eight hundred dollars by this policy, indorsed 23d September, on property on board the Rio Grande, I request that the same be made payable to Fay & Farwell. Boston, September 25, 1848. For value received. J. M. Dodd, Treasurer. Agreed to: Joseph Balch, President. Also, the note, before described, at twenty days, and afterwards a renewal of said note on the 18th of October, 1848, for thirty days, and at the same time received from said Fuller two storage receipts, one of which is here set out: Boston, October 18, 1848. Received on storage, on the West Boston Iron Company's wharf, one hundred tons No. 1 pig iron, for account of Fay & Farwell, and subject to their order. Leonard Fuller, Agent for the West Boston Iron Company.

" The plaintiffs then proposed to inquire of said Fuller as to the capacity in which he acted for said West Boston Iron Company, and the nature and extent of his powers; to which the defendants objected, on the ground that as the West Boston Iron Company was a corporation, it was to be presumed, until the contrary was shown, that they kept records of their proceedings, and such records formed the best evidence of

the appointment of the officers of the corporation and the nature of their powers and duties.

" The plaintiffs thereupon placed a book, purporting to be the records of the West Boston Iron Company, and to contain the votes and by-laws of the corporation, into the hands of said Fuller, who testified, that they were the only records kept by the corporation, to his knowledge, until the reorganization in November, 1848. That the book was in his handwriting up to the 24th of April, 1848. He copied the same from memoranda. He did not know the handwriting, and he thought the residue was in the handwriting of Mr. Dodd.

" Mr. J. M. Dodd testified that said book was made for the records of the West Boston Iron Company; that there was no other book of records of their corporate proceedings; that part of said records was in Mr. Fuller's handwriting, and the residue in his own, except the proceedings of October 27th, which were written by Mr. Gavett, but signed by him, Dodd. He copied said residue from papers Fuller gave him, which were produced and marked A. B. Fuller and Dodd further testified that said corporation had no sworn clerk. It appeared that records were made by copying the minutes A. B. kept by A. Moore, Esq., who was employed to aid in the organization of the corporation, who produced and verified said minutes at the trial.

" I thereupon ruled that there was no sufficient evidence of a record kept by this corporation, and therefore that parol evidence was admissible to prove the agency of the persons who made the contract under which the plaintiffs claim. After this decision, much evidence was introduced in regard to the mode in which the business of the West Boston Iron Company was conducted, and relative to the acts and doings of Leonard Fuller and other persons purporting to act as officers and agents of the company. This evidence I have not thought it necessary to report at large, in consequence of the agreement of the parties to admit the written memoranda before objected to, without objection, which in some manner changed the aspect of the cause. This evidence, if thought necessary, may be subsequently transcribed or read

from my minutes. But before this agreement was made, and upon the evidence as it stood, I proposed to rule and instruct the jury to the following effect:

" That if it had been proved that there was an act of incorporation passed, that the persons named in it met and accepted it and proceeded to act under it, in the absence of any records, it was competent to third persons to prove their doings by parol or other evidence; if, upon objection to the book produced as a record, it is obnoxious to that objection, and no other record had been kept, the doings of the corporation might be proved by other evidence : If the proof showed that Leonard Fuller was appointed general agent, J. M. Dodd, treasurer, and Gavett and others, directors, then as to the rights of third persons, the doings of such agents and officers are to be considered as the doings of the corporation; that if a note was given by the treasurer of the company, approved by one of the directors, payable to the order of Fuller, and indorsed by him, it is *primâ facie* the note of the corporation; that it appearing by the bill of lading by which the iron was consigned to the West Boston Iron Company, that they were *primâ facie* owners, the indorsement of that bill of lading by the treasurer, given simultaneously with a bill of sale by Fuller as agent, both given to secure payment of a note of the company given by their agent, vested the property *primâ facie* in the plaintiffs, and the storage receipt given by Fuller as such agent was within the scope of his authority, and is evidence of the right of possession; and these together constituted a good title by way of lien and special property, unless something is shown to defeat it.

" It was then agreed by the parties that the book purporting to contain the doings of the company, as heretofore testified by Fuller, Moore, and Dodd, does state all the doings of the company in its corporate capacity as far in time as it purports to go, and may be read as evidence on both sides, whether strictly a record or not. From this book, as well as the act of incorporation, it appeared that the act incorporating the West Boston Iron Company was passed the 22d day of

1 *

March, 1848; that the first meeting of the corporation was duly called by two of the persons named therein, Fuller and Allen, by advertisement pursuant to the act; that a meeting was held at the time and place appointed, and the act was accepted. This book purported to contain a set of by-laws adopted by the company, elections of officers, and other proceedings. The material portions were as follows: 'April 25, 1848. Chose Jonathan M. Dodd, treasurer, and Elbridge G. Reeve, secretary. May 8. Voted to accept the by-laws. Chose Leonard Fuller, agent. May 10. Voted to choose four directors. Chose Leonard Fuller, Elbridge G. Reeve, James Kendall, and Jonathan Gavett. The officers of the company shall consist of a treasurer, and an acting and general agent. [There is no mention of directors in the by-laws.] The treasurer shall preside at meetings, &c.; shall keep suitable books, to record shares, &c.; shall keep records of meetings. The general agent shall have power to purchase stock, to contract for work and materials for the use and benefit of said corporation, and generally to superintend the business thereof. All notes for the purchase of stock, or contracts for labor, shall be signed by the treasurer, and approved by at least one of the directors of said corporation.' Whereupon the counsel for the defendants, having read the by-laws, contended that the powers of the officers as thereby conferred were limited and restricted to the special duties therein enumerated, and did not warrant the acts relied on by the plaintiffs in the present case. But it appeared by the by-laws that there was no authority conferred on anybody, in terms, to make sales, to borrow money, or upon the treasurer to pay or receive money.

"They also contended that the corporation had not by its by-laws, or in any other way, authorized Fuller, as their general agent, to hire money or pledge its property, nor had they conferred any such authority on their treasurer. Whereupon I proposed to rule and instruct the jury to the following effect: That persons trading and dealing with such a corporation are not bound by the special limitation of the authority of its officers; that as against third persons, such officers

shall be taken to have the authority which their designations imply : the treasurer to do acts relating to the finances, the secretary to keep records, the agent to superintend and manage the business for which they were chartered; and that such acts are binding on the company, without express authority, and that they are not limited to special and enumerated powers contained in the by-laws. Also, that the power of the agent and treasurer to pledge the goods of the company, as security for a debt of the company, does not depend upon the law governing the power of a factor to pledge goods consigned to him; but upon the law of principal and agent, and that of a corporation and its officers; and that the agent, as such, had a right to pledge the property of the corporation for their debt; that such acts are binding on the corporation, and are not limited to the special and enumerated powers contained in their by-laws.

" On this announcement, both parties consented that a verdict should be taken for the plaintiffs, subject to the opinion of the full court as to the correctness of these rulings.

" If the court shall be of opinion that the rulings are correct, judgment is to be entered for the plaintiffs, and the damages, if any, to be assessed by the court. If these rulings of the presiding judge are incorrect, the case is to be sent back for trial."

*S. Bartlett*, for the defendants. The rulings under which a verdict was submitted to by the defendants are : 1st. That as against third persons dealing with a manufacturing corporation, the officers or agents of the corporation " are not limited to the special and enumerated powers contained in the by-laws," but " shall be taken to have the authority which the designations of such officers imply."

2d. That within this principle, the person designated agent of a corporation, " as such, had a right to pledge the property of the corporation for what is termed in the ruling, 'its debt,' *i. e.* in this case, a loan contracted by such agent with the plaintiffs, contemporaneously with the pledge." The first ruling must be deemed to rest, as we presume, on the established principle, that in cases of general agency, the limitations or

restrictions imposed by the principal upon the agent, are to be deemed private suggestions, or instructions binding *inter se*, but not affecting (as to third persons) the power with which the agent is ostensibly invested.

3d. Upon the extended, and, so far as we can find, new application of that principle to the statute officers of manufacturing corporations, it is to be noted that the ruling does not proceed upon the ground, that the past acts and negotiations of officers of corporations, adopted and acquiesced in, overrule the limitations upon their authority contained in the by-laws or votes of the corporation, but proceeds wholly on the basis that without any antecedent acts the designation or name of the officer implies certain powers, upon which the public have a right to act without inquiry.

Upon this point the defendants submit, 1st. That the general principle in relation to the effect of private restrictions upon the authority of agents, is applicable only to *general agencies*, and that various classes of officers, whether required by statute, or in practice usual in the organization and management of corporations, import *primâ facie* special or limited authority in each.

2d. Further; that the general principle is founded, in part at least, if not wholly, upon the fact that in the case of natural persons the oral or other communications between principal and agent are, or may be, inaccessible to third parties ; whereas corporations are known to all persons to act usually by recorded vote, and so, as is settled in this commonwealth, parties dealing with its officers (when no previous course of dealing is relied on to show the authority) are bound to inquire. *Salem Bank* v. *Gloucester Bank*, 17 Mass. 1, 33, *Wyman* v. *Hallowell and Augusta Bank*, 14 Mass. 58.

3d. That even in case of a general agent, where written authority is supposed to exist, parties contracting are put upon inquiry ; and surely there is, as to manufacturing corporations, in all cases a presumption of by-laws or votes creating its officers. *Beach* v. *Vandewater*, 1 Sandf. 265; *Atwood* v. *Munnings*, 7 B. & C. 278; 3 Hill, 279; 23 Wend. 260.

4th. That the application of the principle which governs as

to general agencies, to the various officers of a corporation, and the treating them as possessing all the powers which their title designates, is beyond the province of the law, since it is a question of proof and fact what those powers usually are. They cannot be judicially known to the court. Probably they will be found to vary with various manufacturing corporations, and generally to be in conformity with some vote or by-law of each corporation.

5th. But if it can be maintained that some of the officers of a corporation have the powers designated by their titles, and if the court can judicially know what those powers are, the principle, as applied to the title " agent," is of very different application. Could the law determine, even in case of natural persons, whether such agency were general or special from the mere title? In the case of corporations whose officers, as pointed out by statute, are somewhat numerous, (including directors, usually the general agents or managers,) how can the law determine what authority is so uniformly confided to the agent as to authorize the world to deal without inquiry? The ruling as to the presumed authority of the person designated " agent " of the corporation in this case was, as we understand it, made upon the general principle stated by the chief justice, and not upon the particular facts of the case, the evidence as to which, or the construction of the particular votes and by-laws, were not discussed or completed. See *Benedict* v. *Lansing*, 5 Denio, 283.

Upon the question, whether the by-laws gave Fuller the power, as agent, to pledge the iron in controversy, the defendants would refer to the following cases. *Shaw* v. *Stone*, 1 Cush. 228. The court say, in the above case, on p. 244, " The vote of November 20 appointed Grant, Seaver & Co. general agents in Boston for selling and buying, and also for taking a general supervision and control of the affairs of the company, subject to instructions from time to time from the directors. Nothing is said about the specific duties which these agents are to perform, except what is implied in these general terms, ' general agents for selling and buying, and taking a general supervision.' The nature and extent of

those duties must be proved *aliunde.*" *Whitwell* v. *Warner*
20 Verm. 425. In the last case, the court held that a genera.
agent, having the management of the affairs of the company,
had no right to execute a mortgage of all the personal prop-
erty of the company. The defendants submit that no dis-
tinction can be made between a mortgage or pledge of part
of the personal property and a mortgage or pledge of the
whole, and refer the court to *Arnold* v. *Brown,* 24 Pick. 92;
*Tapley* v. *Butterfield,* 1 Met. 518.

The defendants submit, that the general language of the
by-law prescribing the duties of general agent is to be con-
strued with reference to the specific duties enumerated in such
by-law; and that thus construed, it will restrict his powers to
that department of the business of the company. This trans-
action of pledging was in its nature a financial operation,
being for the purpose of raising money. The Rev. Sts. pre-
scribe that such a corporation shall have a treasurer; and the
report finds that this company had one. Such being the case,
the defendants submit that by the true construction of the
by-laws, the agent had no control over the finances of the
company, and that the treasurer had no control over the raw
material purchased for the factory, neither had he power to
mortgage the manufactured articles; and that the directors
alone would have the power to authorize a financial operation
requiring a pledge of the property of the company. Story on
Agency, § 62.

*G. M. Browne,* for the plaintiffs. 1. The ruling of the
court, that if the proof shows that Fuller was appointed gen-
eral agent, Dodd, treasurer, and Gavett and others, directors,
then as to the rights of third persons, the doing of such agents
and officers are to be considered as the doings of the corpora-
tion, was in accordance with the well-settled law on the sub-
ject of corporations.

2. So, also, the ruling that if a note was given by the treas-
urer, approved by one of the directors, payable to the order
of Fuller, and indorsed by him, it is *primâ facie* the note of
the corporation; that it appearing by the bill of lading, by
which the iron was consigned to the West Boston Iron Com

pany, that they were *primâ facie* owners, the indorsement of that bill of lading by the treasurer, given simultaneously with a bill of sale by Fuller, as agent, vested the property *primâ facie* in the plaintiffs, and the storage receipts given by Fuller as such agent were within the scope of his authority, and are evidence of the right of possession, and constitutes a good title, unless something is shown to defeat it. *New Eng. Mar. Ins. Co.* v. *De Wolf,* 8 Pick. 62, 63 ; *Bank of United States* v. *Dandridge,* 12 Wheat. 79, per Story, J.; *Burrill* v. *Nahant Bank,* 2 Met. 166 ; *Narragansett Bank* v. *Atlantic Silk Co.* 3 Met. 289 ; *Middlesex Husbandmen* v. *Davis,* 3 Met. 137; *Tripp* v. *Swanzey Manuf. Co.* 13 Pick. 293 ; *Dana* v. *Bank of United States,* 5 W. & S. 247 ; *Everett* v. *United States Bank,* 6 Porter, 166 ; *Berks* v. *Meyers,* 6 S. & R. 16 ; *Levering* v. *Mayor,* 7 Humph. 563 ; *Hayward* v. *Pilgrim Society,* 21 Pick. 276.

3. So, also, the ruling that as against third persons the officers of a corporation shall be taken to have the authority that their signatures imply, the treasurer to do the acts relat· ing to their finances, the secretary to keep records, the agent to superintend and manage the business for which they were chartered, and that third persons trading and dealing with such a corporation are not bound by the special limitation of the authority of its officers contained in their by-laws. Ang. & Am. on Corp. (ed. 1846,) 70, 187, 194, 212–214, 242, 267, 296, 391; Story on Agency, §§ 17–21, 105, 126, 134, and notes; *Hall* v. *Carey,* 5 Georgia, 239 ; *Pentin* v. *Cucullu,* 6 Louis. R. 587 ; *Tradesman Bank* v. *Astor,* 11 Wend. 87.

4. The agent, as such, had a right to borrow money and incidental thereto, to pledge the property of the corporation. 2 Story Eq. §§ 1064, 1064 *a;* Story on Agency, §§ 58, 60, 77, 85, 97, 103, 106; *Sargent* v. *Webster,* 13 Met. 503, 504, *Tripp* v. *Swanzey Manuf. Co.* 13 Pick. 293; Ang. & Am. on Corp. 234, 242, 245.

5. Further; the by-laws of this company do not contain anything to restrain said officers from making this contract. *Bates* v. *Keith Iron Co.* 7 Met. 224.

In *Shaw* v. *Stone,* 1 Cush. 228, Grant, Seaver & Co. were

the factors in Boston for selling and buying and obtaining "facilities" on commission for the Hampden Co. of Ware, where Bartlett was the agent, and the remarks quoted from p. 244, were made with reference to the powers of G., S. & Co. in that capacity, as factors, and on a question as to the admissibility of certain evidence. But the case proceeds on the principle that G., S. & Co. themselves had a lien on goods sent them by the Hampden Co.'s agent, Bartlett, against which, G., S. & Co. had made acceptances,—that is, that such goods were pledged to G., S. & Co. by the act of the agent at the mill in sending them and drawing against them. And on pages 253, 254, speaking of the drafts of Bartlett, the agent, made contrary to the vote of the directors, the court say : " The persons by whom they were presented were holders for value of negotiable securities taken in the regular course of business, before they became due, and without notice. Their rights did not depend on the vote above mentioned ; that vote did not appear on the face of the drafts, and the holders cannot be presumed to have had notice of it. The drafts were drawn by the general and authorized agent of the company," &c.

In short, the principles of that case fully sustain the positions of the plaintiffs in the present case. 1st. That the by-laws of the West Boston Iron Company did not restrain, but empowered their agents, acting together, (general agent, treasurer, and director,) to make this contract. 2d. If those by-laws had contained any restriction of power, the plaintiffs " cannot be presumed to have had notice of it," as they had not in fact. *Whitwell* v. *Warren,* 20 Verm. 425, was an attempt by an agent not having " the general superintendence and control of the business," but " attending only to the daily routine" at the mill, to mortgage " the entire property," (p. 446,) " all the real estate and machinery," (p. 427.)

Although this court, in *Sargent* v. *Webster,* 13 Met. 503, 504, say that it may be in furtherance of the purposes of a company, under certain circumstances, to convey its entire property, it is not claimed anywhere that to make such conveyance is among the ordinary powers of an agent such as described in *Whitwell* v. *Warren.*

In *Benedict* v. *Lansing*, 5 Denio, 283, " The proof only showed that Kirby was agent from the organization of the company until it failed, and the company failed a year before the note was executed." (p. 284.)

SHAW, C. J.   This was an action of replevin for about seventy-two tons of pig iron.   The plaintiffs claimed title under an alleged mortgage of the property made to them by the West Boston Iron Company, by their officers, 25th September, 1848, whilst the property was on shipboard from New Jersey to Boston, consigned to the West Boston Iron Company.   The defendants, denying the validity of such mortgage, claimed under a mortgage or assignment made by the same company to them, in November, 1848.   The question, therefore, to be tried, was upon the regularity and validity of the plaintiffs' prior title.   There has been some misunderstanding of this report, partly arising from the brief manner in which it is reported, but more especially because, after a large mass of evidence was in, the course of the trial was changed, by the admission of evidence, by the consent of the defendants, which had previously been offered by the plaintiffs, objected to by the defendants, and ruled inadmissible by the court.   It is necessary, therefore, to consider these different species of evidence, and the time and stage of the cause, at which the different rulings were made, in order to understand them.

To establish their title, the plaintiffs offered a note, purporting to be made by the officers of the West Boston Iron Company, and certain documents relied on, as a mortgage and conditional transfer of the iron in question, to secure the payment of that note.

It appears by the report that there was evidence tending to show that application was made to the plaintiffs, by Leonard Fuller, purporting to act for the West Boston Iron Company, for a loan of $2,000; that a note for that sum was made, as the promise of the West Boston Iron Company, by Dodd, treasurer of said company, payable to Leonard Fuller, by him indorsed, and signed as " approved " by said Fuller, as one of the directors; that, to secure this loan, Dodd, the treasurer, delivered to the plaintiffs a bill of lading of one hundred

tons of iron, shipped on board the brig Rio Grande, bound to Boston, and consigned to the West Boston Iron Company, with an indorsement thereon of same date with the note, " Please deliver the within to Messrs. Fay & Farwell," (the plaintiffs,) and signed J. M. Dodd, treasurer. Also, an indorsement on the policy of insurance, requesting the underwriters, in case of loss, to pay to Fay & Farwell, dated 25th September, 1848, and signed J. M. Dodd, treasurer, and agreed to by Joseph Balch, president of the insurance company.

It then became necessary to show that the persons, thus acting as agents and officers of the corporation, one as agent and director, and one as treasurer, were duly constituted such officers, and had power to bind the corporation. The plaintiffs then proposed to inquire of Fuller as to the capacity in which he acted for said West Boston Iron Company, and the nature and extent of his powers, to which the defendants objected, on the ground that the West Boston Iron Company being a corporation, it was to be presumed, until the contrary was shown, that they kept records of their proceedings, and that such records would form the best evidence of the appointment of the officers of the corporation, and the nature of their powers and duties.

Whereupon the plaintiffs produced a book purporting to be their records, and Fuller verified them as the only records kept by the corporation, until the reorganization in November, 1848. It was objected to, and much evidence was offered to the court to show the manner in which the book produced was prepared and kept, whereupon it was rejected as not being competent evidence of a record. It was then ruled, that, as there was no evidence of any record kept by this corporation, parol evidence was admissible to prove the agency of the persons who made the contract, under which the plaintiffs claimed

Much evidence was then given to prove the mode in which the business of the company was done by Fuller and the other persons acting as officers. Perhaps it might have rendered the report more intelligible, if this evidence had been

more fully reported. Upon this evidence, independently of any records or by-laws, and before the agreement afterwards made, it was proposed to rule and instruct the jury to the following effect:

That if there was an act of incorporation passed, and the persons named in it met and accepted it, and proceeded to act under it, in the absence of any records, it was competent for third persons to prove their doings by parol evidence; and if the proof showed that Leonard Fuller was appointed general agent, J. M. Dodd, treasurer, and Gavett and others, directors, then, as to the rights of third persons, the doings of such agents and officers were to be considered as the doings of the corporation; that if a note was given by the treasurer of the company, approved by a director, payable to Fuller or order, and indorsed by him, it was *primâ facie* the note of the corporation; that by the bill of lading conveying the iron to the company, they were *primâ facie* owners of it, and the indorsement of that bill of lading by the treasurer, given simultaneously with a bill of sale by Fuller, as agent, both given to secure the note of the company, would vest the property *primâ facie* in the plaintiffs.

This proposed instruction in matter of law was announced with a view of submitting the whole of the parol evidence to the jury, to determine as they should find the facts upon the evidence.

It does not appear by the report, that this proposed direction, upon the evidence as it stood, was objected to, and no question has been raised upon it on the present argument.

But the report further shows, that after this announcement, before going to the jury, the parties came to an agreement: the defendants withdrew their objection to the book purporting to be the records, and it was agreed by the parties, that the book testified of by Fuller, Moore, and Dodd, did state all the doings of the company, in its corporate capacity, as far as it purports to go in point of time, and might be read as evidence on both sides, whether strictly a record or not.

From the book thus given in evidence as a record, it appeared, that after the act of incorporation, a meeting was

duly called and held, the act was accepted, the company was organized and held meetings, chose officers and made by-laws. The character of the inquiry, or rather the evidence on which it should proceed, was thus changed, and the question was, how the powers of these officers were conferred, limited, or qualified by the votes and by-laws of this company thus admitted. The subsequent rulings and decisions were obviously made in reference to these votes and by-laws.

The counsel for the defendants, having read the by-laws, contended that the powers of the officers, as thereby conferred, were limited and restricted to special duties therein enumerated, and did not warrant the acts relied on in the present case; the argument was founded on that part of the by-law, which provided, that the agent should have power to purchase stock, to contract for work and materials for the use and benefit of the corporation; and these being specially enumerated, excluded others. But it appeared by the same by-laws, that no power was conferred on any one, in terms, to make sales, to borrow money, and none upon the treasurer, even to pay or receive money.

The counsel for the defendants also contended that the corporation had not by its by-laws, or in any other way, authorized Fuller, as its general agent, to hire money or pledge its property, nor had they conferred any such authority on its treasurer.

It was in reference to these claims, on the effect and operation of the by-laws, as being sufficient to alter and vary the instructions before proposed to be given, that the succeeding rulings were made. They related to a manufacturing and trading corporation under the laws of Massachusetts, and of course are to be limited to such corporations, and have no application to corporations of a different constitution and character.

The instructions proposed to be given in regard to these claims, and in reference to the grounds of law before stated, were these:

That persons trading and dealing with such a corporation are not bound by the special limitations of the authority of

its officers; that, as against third persons, such officers shall be taken to have the authority which their designations imply: the treasurer to do acts relating to the finances, the secretary to keep records, the agent to superintend and manage the business for which it is chartered; and that such acts are binding on the company, without express authority, and that they are not limited to special and enumerated powers contained in the by-laws. Also, that the power of the agent and treasurer to pledge the goods of the company, as security for a debt of the company, does not depend upon the law governing the power of a factor to pledge goods consigned to him, but upon the law of principal and agent, and that of a corporation and its officers; and that the agent, as such, had a right to pledge the property of the corporation for a loan of money for their use; that such acts are binding on the corporation, and are not limited to the special and enumerated powers contained in the by-laws.

On this announcement, it appears that both parties consented that a verdict should be taken for the plaintiffs, subject to the opinion of the whole court, as to the correctness of these rulings.

This course is, perhaps, to be regretted, because such opinions expressed *à priori*, and in general terms, almost necessarily assume the form of abstract propositions, and are less qualified and restricted than they would be when explained, illustrated, and applied to actual facts in evidence. It seems, from the argument, that the counsel for the respective parties did not understand them alike. Taken in reference to the subject-matter, and to the questions raised and discussed, the whole court are of opinion that they were correct.

The term "limitation of the authority of officers," in the first paragraph, manifestly means that supposed limitation contended for, arising from the enumerating of certain powers, and omitting others; it could not mean express limitation by vote or by-law, because there was no such express limitation, nor was any suggested. If it is understood and taken in connection with the evidence, we are of opinion, that as a general rule, it is correct. The point mainly relied on was, that be-

2*

cause two powers were enumerated as conferred on the agent, to wit, to purchase stock and to contract for work and materials, although general words were added, to superintend the business, yet all other powers were negatived or withheld. But we think the officers so situated are not by such enumeration restricted from the exercise of the ordinary powers, which their designations imply; more especially, as the by-law gave only one authority to the treasurer, to wit, to sign all notes given for the purchase of stock and on contracts for labor; and the application of such a rule would take away all power from the treasurer to pay or receive money, or perform the ordinary functions which his designation as the treasurer of a manufacturing and trading corporation would ordinarily hold out to the world. It is a rule applicable to third persons trading and dealing with such a corporation, and not presumed to be conusant of the special provisions of their by-laws.

The other part of the direction, to wit, that the agent and treasurer, by their concurrent act, had a right to pledge the property of the corporation, if it stood as an absolute and unqualified proposition, applicable to all corporations, would certainly be more doubtful, and we should hesitate before laying down such a proposition. But applied to the subject-matter, with its proper qualifications, the proposition was this: that as a trading corporation, the company had power to raise money, by loan, as necessarily incident to their power to purchase stock and materials, and to purchase it to the best advantage; that as incident to the power of purchasing, was that of giving security, and as such, of pledging the purchased stock or raw material, the property of the company; that as a corporation must necessarily act by officers and agents, such officers and agents are not in the character of mere factors; that by the concurrent act of the general agent and treasurer, the one to give a note for a loan, and thus charge the company with a debt, and the other, by bill of sale and indorsement of the bill of lading, to transfer a right of property in the iron belonging to the company, for the security of such note; that they were not restrained by the limited enumeration of powers, both of the treasurer and

agent, as expressed in the by-laws, but that by their concurrent act, they could give a conditional transfer, by means of which the property would vest in the mortgagees.

Such being the effect of the instructions, the court are of opinion that they were right, and that the plaintiffs are entitled to                    *Judgment on the verdict.*